UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AZMIE MADANAT,<br><br>Plaintiff,<br><br>-against-<br><br>FIRST DATA CORPORATION; FIRST DATA MERCHANT SERVICES CORPORATION; and DOES 1-25 INCLUSIVE,<br><br>Defendants. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 11-cv-00364 (LDW)(ARL) |

Mitchell M. Breit
mbreit@hanlyconroy.com
HANLY CONROY BIERSTEIN
SHERIDAN FISHER HAYES LLP
112 Madison Ave., 7th Floor
New York, New York 10016
Tel: (212) 784-6400
Fax: (212) 213-5949

Ali Abtahi (admitted *pro hac vice*)
aabtahi@abtahilaw.com
Idene Saam (admitted *pro hac vice*)
isaam@abtahilaw.com
ABTAHI LAW FIRM
1012 Torney Avenue
San Francisco, CA 94129
Tel: (415) 639-9800
Fax: (415) 639-9801

T. Christopher Tuck (admitted *pro hac vice*)
ctuck@rpwb.com
RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
Tel: (843) 727-6500
Fax: (843) 216-6509

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 1

ARGUMENT .......................................................................................................................... 3

I. This Court Should Render Summary Judgment on the Issue of the Legality of the Optional Liquidated Damages Provision ................................................ 3

II. New York Law Prohibits the Optional Aspect of First Data's Liquidated Damages Provision ................................................................................................ 4

III. The Lease Break Penalty Is Punitive and Provides For a Remedy that Is Grossly Disproportionate to the Harm Suffered by First Data ........................... 6

    A. Actual Losses are Not Difficult to Ascertain ........................................... 7

    B. The Stipulated Damages are Not Reasonable in Proportion to Anticipated Probable Loss ........................................................................ 8

CONCLUSION ....................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Amnesty Am. v. Town of W. Hartford,*
    361 F.3d 113 (2d Cir. 2004) .................................................................................................. 3

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................................................................... 3

*Atel Fin. Corp. v. Quaker Coal Co.,*
    132 F. Supp. 2d 1233 (N.D. Cal. 2001) .......................................................................... 7, 8, 9

*Bay v. Times Mirror Magazines, Inc.,*
    936 F.2d 112 (2d Cir. 1991) ................................................................................................... 4

*BellSouth Telecomms., Inc. v. W. R. Grace & Co.,*
    77 F.3d 603 (2d Cir. 1996) ..................................................................................................... 4

*Caldarola v. Calabrese,*
    298 F.3d 156 (2d Cir. 2002) ................................................................................................... 3

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ............................................................................................................... 4

*CIT Group/Commercial Servs., Inc. v. Holladay-Tyler Printing Corp.,*
    No. 94 CIV. 6642 (HB), 94 CIV. 6645 (HB), 1995 WL 702343
    (S.D.N.Y. Nov. 29, 1995) ................................................................................................... 5, 7

*Dalston Constr. Corp. v. Wallace,*
    214 N.Y.S.2d 191 (N.Y. Sup. Ct. 1960) ............................................................................ 4, 5

*Del Nero v. Colvin,*
    975 N.Y.S.2d 825 (N.Y. App. Div. 2013) ............................................................................. 6

*Grossinger Motorcorp, Inc. v. Am. Nat'l Bank & Trust Co.,*
    240 Ill.App.3d 737, 607 N.E.2d 1337 (Ill. Ct. App. 1993) ..................................................... 6

*Huminski v. Corsones,*
    396 F.3d 53 (2d Cir. 2005) ..................................................................................................... 3

*Jarro Bldg. Indus. Corp. v. Schwartz,*
    281 N.Y.S.2d 420 (N.Y. App. Term 1967) ....................................................................... 4, 6

*Lazard Freres & Co. v. Protective Life Ins. Co.,*
    108 F.3d 1531 (2d Cir. 1997) ................................................................................................. 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ............................................................................................................... 3

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*,
　715 F.3d 102 (2d Cir. 2013)............................................................................................... 3

*Nat'l Telecanvass Assoc., Ltd. v. Smith*,
　470 N.Y.S.2d 22 (N.Y. App. Div. 1983) ....................................................................... 6, 7

*New York v. Brooklyn & Manhattan Ferry Co.*,
　238 N.Y. 52 (N.Y. 1924) ................................................................................................... 7

*Queries v. General Motors Corp. (Motors Holding Div.)*,
　758 F.2d 839 (2d Cir. 1985).............................................................................................. 4

*R.G. Group, Inc. v. Horn & Hardart Co.*,
　751 F.2d 69 (2d Cir. 1984)................................................................................................ 3

*SEC v. Research Automation Corp.*,
　585 F.2d 31 (2d Cir. 1978)............................................................................................ 3, 4

*Stock Shop, Inc. v. Bozell & Jacobs, Inc.*,
　481 N.Y.S.2d 269 (N.Y. Sup. Ct. 1984) ........................................................................... 5

*Stossel-Blanco v. Costco Wholesale Corp.*,
　12-CV-2076, 2014 WL 2526622 (E.D.N.Y. June 2, 2014) ............................................. 4

*Trilegiant Corp. v. Sitel Corp.*,
　No. 09-6492 (KBF), 2013 WL 2181193 (S.D.N.Y. May 20, 2013) ..................... 4, 6, 7, 8

*Truck Rent-A-Center v. Puritan Farms 2d, Inc.*,
　41 N.Y.2d 420 (1977) ....................................................................................................... 6

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
　369 F.3d 34 (2d Cir. 2004)................................................................................................ 5

*Vernitron Corp. v. CF 48 Assocs.*,
　478 N.Y.S.2d 933 (N.Y. App. Div. 1984) ..................................................................... 6, 7

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................................. 3

## INTRODUCTION

This nationwide certified class action confronts a narrowly tailored issue of law: did credit card processor First Data Corporation[1] (hereafter "First Data"), violate New York law when it inserted an optional liquidated damage provision in its standard equipment lease contracts? Because New York law prohibits optional liquidated damage clauses, including where such clauses impose a disproportionate penalty, this Court should declare the optional liquidated damage provision illegal and enter summary judgment in favor of Plaintiff and the class.

## FACTUAL BACKGROUND

Plaintiff Azmie Madanat brought this action against First Data arising out of Defendants' practices in credit card payment processing and merchant transaction services. Mr. Madanat opened a business checking account for a small business at Wells Fargo Bank and applied for a credit card account. *See* Madanat Decl., at ¶¶ 2-3; attached at Dkt. 55-3; *see also* Stmt. of Material Facts at ¶¶ 2-3. Upon signing the application, Mr. Madanat was assigned a lease for a Verifone credit card terminal. *Id.* ¶¶ 4-5; *see also* Stmt. of Material Facts at ¶ 4. The monthly lease for the Verifone terminal was $39.00 per month (before taxes). *Id.* ¶ 5; *see also* Stmt. of Material Facts at ¶ 5. Over the course of 48 months, the total payments amounted to $1,872.00. After Mr. Madanat returned his terminal, First Data accelerated Mr. Madanat's lease and demanded a lump-sum payment of $2,026.72, an amount that is nearly $200 *more* than the total amount of payments during the entire lease period. *Id.* ¶ 10; *see also* Stmt. of Material Facts at ¶ 9. Plaintiff then brought claims arising under New York and federal law, including Plaintiff's allegation that a lease break penalty provision, termed the "optional liquidated damages clause" by this Court, stood as unenforceable.

---

[1] References to First Data Corporation are meant to include its subsidiary named in this action, First Data Merchant Services Corporation.

1

First Data utilizes the optional liquidated damage provision, upon default by merchants in its Wells Fargo merchant program, to accelerate the lease agreement and declare immediately due (1) all remaining lease payments, as well as (2) the fair market value of the leased equipment, as determined solely by First Data:

> Upon the occurrence of any default, <u>we may at our option</u>, effective immediately without notice, either (i) terminate this lease and our future obligations under this Lease Agreement, repossess the Leased Equipment and proceed in any lawful manner against you for collection of all charges that have accrued and are due and payable, or (ii) <u>accelerate and declare immediately due and payable all monthly lease charges for the remainder of the applicable lease period together with the fair market value of the Leased Equipment (as determined by us), not as a penalty but as liquidated damages for our loss of the bargain.</u>

*See* Exh. 1 at § 32.12(b) (emphasis added); *see also* Brouillard Decl., Exh. B at Dkt. 57 (authenticating Wells Fargo Program Guide); *see also* Stmt. of Material Facts at ¶ 6.

Following a hearing on class certification, the Court certified a declaratory and injunctive relief class, as it relates to enforceability of the optional liquidated damage provision, for the approximately 101,000 merchants who leased First Data's Point of Sale ("POS") terminals via its standard form contracts. *See* Report and Recommendation, Dkt. 71 (hereafter "Certification Order"). Plaintiff defined the class as "All merchants in the United States who returned their POS Terminal(s) to Defendants prior to their lease expiration and who were charged for lease payments for any period of time after the return of the POS Terminal." First Data elected not to object to the Certification Order, and the Certification Order was formally adopted by this Court on July 16, 2012. *See* Dkt. 74.

Important to the analysis here, the Court reinforced in its Certification Order that the legality of the optional liquidated damage provision rises and falls on the language itself:

> The Court need only look at *the terminology of the agreement* in order to determine whether the Optional Liquidated Damages Clause is enforceable under New York Law.
>
> . . .
>
> [B]oth New York common law and the Uniform Commercial Code look at the circumstances surrounding the creation of the contract when determining whether a liquidated damages provision is enforceable. . . . Therefore, the Court must focus on disparities that exist at the time the contract is entered into.

Certification Order at pp. 12-14 (italics added).

Based upon the Court's focus on the precise language in the optional liquidated damages provision, the parties conducted narrow merits discovery and attempted to implement a class resolution. Those settlement efforts failed, and this case is now ripe for disposition on the core common issue of the optional liquidated damage clause's legality.

## ARGUMENT

I. **This Court Should Render Summary Judgment on the Issue of the Legality of the Optional Liquidated Damages Provision.**

As this Court has recently held:

> Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 108 (2d Cir. 2013). The moving party bears the burden of showing entitlement to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).
>
> Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002), quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). As the Supreme Court has stated, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). The non-moving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed.

3

> *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984), quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W. R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996), quoting *Research Automation Corp.*, 585 F.2d at 33.

*Stossel-Blanco v. Costco Wholesale Corp.*, 12-CV-2076, 2014 WL 2526622 (E.D.N.Y. June 2, 2014), attached as Exh. 2; *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (non-moving party must produce specific facts to establish that there is a genuine factual issue to be tried); *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991) (Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim); *Queries v. General Motors Corp. (Motors Holding Div.)*, 758 F.2d 839, 840 (2d Cir. 1985) (mere existence of non-material factual issues insufficient to defeat summary judgment).

## II.  New York Law Prohibits the Optional Aspect of First Data's Liquidated Damages Provision.

The equipment lease provision of the agreement contains an unlawful default provision that vests First Data with the sole discretion to choose between one of two remedies: (1) an accounting for accrued charges and repossession of the terminal with no acceleration clause; or (2) an acceleration of the remaining payments due under the lease together with the fair market value of the POS terminal. The goal of a liquidated damages provision is to allow parties to anticipate and settle potential contract breaches in advance. *Dalston Constr. Corp. v. Wallace*, 214 N.Y.S.2d 191, 193 (N.Y. Sup. Ct. 1960). A court will uphold a liquidated damages provision if—where damages will be difficult to ascertain—it specifies a fixed damages amount, and if the estimated damages are not disproportionate to the probable loss. *Jarro Bldg. Indus. Corp. v. Schwartz*, 281 N.Y.S.2d 420, 426 (N.Y. App. Term 1967) (holding that a clause operating to allow "minimum recovery regardless of actual damages and also afford[ing] . . . the option to disregard the liquidated damages specified if the actual damages exceed the amount stipulated" did not qualify as a valid

liquidated damages provision); *see also Trilegiant Corp. v. Sitel Corp.*, No. 09-6492 (KBF), 2013 WL 2181193, at *7 (S.D.N.Y. May 20, 2013), attached as Exh. 3.

It is axiomatic, however, that optional liquidated damage provisions that give one party the option to elect remedies and seek actual damages are unenforceable under New York law. *CIT Group/Commercial Servs., Inc. v. Holladay-Tyler Printing Corp.*, No. 94 CIV. 6642 (HB), 94 CIV. 6645 (HB), 1995 WL 702343, at *3 (S.D.N.Y. Nov. 29, 1995)[2], attached as Exh. 4 ("[S]uch liquidated damages clauses would simply serve as a mechanism for providing a guaranteed minimum recovery while allowing for the pursuit of actual damages . . . that liquidated damages clauses must eschew."). Liquidated damage clauses "leav[ing] the door wide open" for double recovery, of *actual* and *liquidated* damages, permit the seller to "have his cake and eat it too." *Dalston Construction*, 214 N.Y.S.2d at 193 (holding that a contract for home construction— allowing the contractor to elect for actual damages in addition to liquidated damages, in the event of a breach—to be invalid and unenforceable).

The Second Circuit has been unequivocal on this issue in stark terms: "Under no circumstances . . . will liquidated damages be allowed where the contractual language and attendant circumstances show that the contract provides for the full recovery of actual damages, because liquidated damages and actual damages are mutually exclusive remedies under New York law." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 71 (2d Cir. 2004); *see also Stock Shop, Inc. v. Bozell & Jacobs, Inc.*, 481 N.Y.S.2d 269, 271 (N.Y. Sup. Ct. 1984) ("There is

---

[2] Unlike *CIT Group*, where the court upheld a liquidated damages clause that calculated damages based in part on the market value obtained by CIT when it resold the leased equipment, the First Data provision states that the fair market value of the leased equipment will be unilaterally determined by First Data. And instead of establishing a schedule of the potential loss in the value of the equipment, First Data states that it has sole discretion to determine the fair market value owed by the lessee for the equipment. First Data thus grants itself an entirely impermissible liquidated damages provision that establishes a recovery for easily ascertained damages, i.e., remaining lease payments, plus the sole discretion to establish the fair market value of the equipment for an additional payment. This disproportionate recovery can be ascertained by looking at nothing more than the provision itself, and it squarely qualifies as an unenforceable penalty under New York law.

therefore, no true liquidation of damages since the plaintiff is given the option to disregard the liquidated sum and sue for actual damages."); *Grossinger Motorcorp, Inc. v. Am. Nat'l Bank & Trust Co.*, 240 Ill.App.3d 737, 752, 607 N.E.2d 1337, 1347 (Ill. Ct. App. 1993) (citing *Jarro Building Industries*, 281 N.Y.S.2d at 426) ("[T]he optional nature of the liquidated damages provision in this case which allows defendant to seek actual damages or alternatively to retain the earnest money as liquidated damages is unenforceable. In so holding we note that if such an optional provision were enforceable, it would be invoked only as a penalty when the liquidated damages exceeded the actual damages.").

First Data sought the best of both worlds: an agreement that not only provided First Data with actual damages, but also allowed for an election to recover liquidated damages. *See* Ex. 1 at § 33.12(b). The language of the agreement expressly states that First Data may, in the event of a default, and at its option, terminate the lease and proceed with collection of any and all charges due and payable (i.e. actual damages); or it may "accelerate and declare immediately due and payable all monthly lease charges for the remainder of the applicable lease period together with the fair market value of the Leased Equipment (as determined by us). . . ." (i.e. liquidated damages). *Id.* This format for a liquidated damages provision has been consistently invalidated as unenforceable under New York law; the same should now hold true here.

### III. The Lease Break Penalty Is Punitive and Provides For a Remedy that Is Grossly Disproportionate to the Harm Suffered by First Data.

First Data can only sustain its liquidated damages provision if: (1) the actual loss is difficult to ascertain, and (2) the amount stipulated is reasonable in proportion to the probable loss. *See Vernitron Corp. v. CF 48 Assocs.*, 478 N.Y.S.2d 933, 934 (N.Y. App. Div. 1984) (citing *Truck Rent-A-Center v. Puritan Farms 2d, Inc.*, 41 N.Y.2d 420, 425 (1977); *Nat'l Telecanvass Assoc., Ltd. v. Smith*, 470 N.Y.S.2d 22, 24 (N.Y. App. Div. 1983)); *see also Trilegiant Corp. v. Sitel Corp.*, No. 09-6492 (KBF), 2013 WL 2181193, at *7 (S.D.N.Y. May 20, 2013); *Del Nero v. Colvin*, 975

N.Y.S.2d 825, 828 (N.Y. App. Div. 2013). "Determining whether a provision constitutes true liquidated damages or is, in fact and effect, a penalty, is a question of law." *Trilegiant Corp.*, 2013 WL 2181193, at *7. "[I]n determining whether a provision in an agreement is to be considered a penalty or a legally enforceable liquidated damages clause, any reasonable doubt should be resolved in favor of a construction which holds the provision to be a penalty." *Nat'l Telecanvass*, 470 N.Y.S.2d at 24; *see also Vernitron Corp.*, 478 N.Y.S.2d at 934; *New York v. Brooklyn & Manhattan Ferry Co.*, 238 N.Y. 52, 56 (N.Y. 1924) ("The tendency of the courts in doubtful cases is to favor the construction which makes the sum payable for breach of contract a penalty rather than liquidated damages, even where the parties have styled it liquidated damages rather than a penalty."). Indeed, "[w]here an ambiguity exists in a standard-form contract supplied by one of the parties, the well-established contra proferentem principle requires that the ambiguity be construed against that party." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1544 (2d Cir. 1997).

Liquidated damages provisions must specify a fixed amount, "either in absolute dollars or in some manner that obviates foreseeable court involvement." *CIT Group*, 1995 WL 702343, at *1 (comparing liquidated damages provisions that were upheld or invalidated in other cases based on the specificity of the damage amounts stipulated); *see also Atel Fin. Corp. v. Quaker Coal Co.*, 132 F. Supp. 2d 1233, 1241 (N.D. Cal. 2001) (holding that a provision requiring the lessee to pay the anticipated residual value of the equipment, in addition to the value of the remaining terms of the lease, would effectively multiply the lessor's likely actual damages and would therefore be a penalty).

### A.  Actual Losses are Not Difficult to Ascertain.

First Data's damages from a merchant breach are simple to ascertain. Once a lease is terminated, the fixed monthly lease payments for any months remaining in the lease period—not

7

taking into account any mitigation that First Data can easily do—can simply be added to calculate First Data's loss. In fact, this Court already noted as much: *"The accelerated lease payments will always equal the total amount of revenue First Data expected to receive had the parties each carried out their part of the bargain."* Certification Order at p. 14. First Data's liquidated damages provision thus fails the first prong of the *Vernitron* analysis because the actual loss here, viewed at the time of contracting, was not difficult to ascertain as a matter of law. Accordingly, the damages provision must be deemed unenforceable on this basis alone.

### B. The Stipulated Damages are Not Reasonable in Proportion to Anticipated Probable Loss.

While the damages from a merchant breach are easy for First Data to ascertain, it is also true that its stipulated damages are unreasonable in proportion to the anticipated probable loss. "Courts will not uphold such provisions if the specified amount is not a reasonable measure of the anticipated harm." *Trilegiant Corp.*, 2013 WL 2181193, at *7. "If a purported liquidated damages provision is plainly disproportionate to the contemplated injury, the amount will be disallowed." *Id.* "Similarly, a 'liquidated damages' provision that is intended to compel contractual performance rather than to compensate for loss in the event of a breach is unenforceable as a penalty provision." *Id.*

As one example of a liquidated damages provision found in the context of equipment leases, a federal district court found the provision unenforceable where it resulted in a double recovery windfall to the lessor. *Atel Finance*, 132 F. Supp. 2d 1233. In *Atel*, the liquidated damages provision allowed the lessor of industrial equipment to recover (1) all remaining payments under the lease (i.e. the "benefit of the bargain"); and (2) the anticipated residual value of the equipment. *Id.* at 1241. As the court thoughtfully reasoned, the formula allowing for the recovery of the market value of the equipment "might be reasonable in the event of destruction to

8

the equipment, where no future value in the equipment remains, [but] it is highly disproportionate to the loss of only a limited number of loan payments." *Id.* Thus, the *Atel* court found the liquidated damages provision unreasonably required a defaulting lessee to pay the entire cost of the equipment while the lessor would be allowed to repossess and re-lease or sell it. *Id.* This double recovery entitled the lessor "to an amount grossly disproportionate to its actual damages," and was accordingly unenforceable. *Id.* at 1243.

Similarly, First Data's standard form default provision provides not only for double, but *triple recovery*, and it fails to consider mitigation of damages. Specifically, the provision allows First Data to obtain: (1) the benefit of the bargain, in that it accelerates all remaining lease payments; (2) the so-called "fair market value" of the terminal, as determined solely by First Data; and (3) any potential payments obtained from another merchant by re-leasing the repossessed terminal. *See* Ex. 1, § 32.12(b). This manner of triple recovery is, as a matter of law, unreasonable in proportion to the anticipated loss as viewed at the time of contracting. The liquidated damages provision should thus be declared unenforceable because it results in First Data multiplying its damages and recovering an amount that is grossly disproportionate to any actual damages suffered by it.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant summary judgment by finding First Data's optional liquidated damages provision illegal under New York law.

Dated: Mount Pleasant, South Carolina

June 25, 2014

Respectfully submitted,

RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC

/s/ T. Christopher Tuck
T. Christopher Tuck (*admitted pro hac vice*)
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC  29464
(843) 727-6500
E-mail: ctuck@rpwb.com

Attorney for Plaintiff and the Class