UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AZMIE MADANAT, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FIRST DATA CORPORATION; FIRST DATA MERCHANT SERVICES CORPORATION; and DOES 1-25, INCLUSIVE,<br><br>　　　　　　Defendants. | Case No. 1:11-cv-00364-LDW-ARL<br><br>**DECLARATION OF BRYAN BROUILLARD IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

　　　　I, Bryan Brouillard, declare as follows:

　　　　1.　　I am over 18 years of age and make this Declaration based upon personal knowledge of the facts set forth below. If called upon to testify, I could and would testify competently to their truth.

　　　　2.　　I am Vice President of Leasing Operations for First Data Merchant Services ("First Data").

　　　　3.　　As part of my job duties, I am responsible for managing the collections department, which is tasked with collecting money owed from delinquent leasing merchants. I am familiar with First Data's collection process, its system for collecting payment, the various charges and taxes incurred by merchants and how each are calculated, and the Payment History Reports that First Data's computer system generates detailing each merchant's transaction.

　　　　4.　　I have read and am familiar with section 32.12(b) of First Data's leases that originate through Wells Fargo Merchant Services. This provision is referred to in First Data's Opposition to the plaintiff's Motion for Summary Judgment as the "Default Clause."

　　　　5.　　Subsection (b)(i) of the Default Clause is typically used by First Data when it needs to terminate a lease due to a lessee's conduct-related breach. This is different than a

breach for failure to make lease payments and includes situations where a lessee is doing things that are in breach of First Data's agreements and leave First Data wishing to end the relationship. A common example is excessive chargebacks. A "chargeback" is when a card purchase needs to be refunded because the card owner claims that the purchase was not his or hers. If this happens unusually frequently with a particular merchant, then First Data will often terminate the relationship completely, including the lease component. Subsection (b)(i) allows First Data to do that. And since the termination of the lease is at First Data's volition, First Data will simply collect any past due payments and collect the terminal. That is why subsection (b)(i) authorizes First Data to terminate the lease, collect whatever payments are due as of that termination, and collect the leased terminal. Under certain circumstances, based on where the merchant is in the lease term, First Data actually can incur a loss in terminating under this provision, based on the amount paid to the alliance, here Wells Fargo, to acquire the lease.

6. By contrast, subsection (b)(ii) of the Default Clause is typically used when a lessee has stopped making payments on a lease or otherwise sought to abandon the lease.

7. Although subsection (b)(ii) authorizes First Data to charge—in addition to the sum of lease payments remaining under the lease—for the fair market value of the leased terminal, First Data as a practice does not charge for the terminal if a defaulting merchant returns it. It is rare that defaulting merchants do return terminals to First Data, but when they do they sometimes send them to the wrong First Data address and it can take the leasing department some time to track down and account for the terminal. But when it does, any fair market value charges that have been made to defaulting merchants are retracted or deducted from the balance owed.

8. Moreover, there is no strict enforcement of either of the provisions—(b)(i) or (b)(ii)—in the Default Clause. In reality, each lease breach and the circumstances that follow are different. In most cases, a negotiation occurs between the breaching lessee and First Data's collections department that results in an agreement by First Data to accept something *less* than what the Default Clause would provide in order to allow the lessee to exit the lease early. And

even then, First Data rarely is able to collect all that it is owed, much less all that it would be entitled to under the Default Clause.

9. Madanat's situation illustrates this perfectly. After Madanat defaulted, he had a conversation with First Data's collections department and agreed to a payoff amount of $2026.72. This is reflected in the June 24, 2010 letter sent to him by First Data, which he attached to his complaint in this case as Exhibit E and is attached hereto as Exhibit A. Specifically, the letter states that First Data "will accept the offer of $2026.72" in order to relieve Madanat of any further obligations under the lease. However, that amount—$2026.72—did not include the fair market value of the terminal. First Data was willing to excuse Madanat from his lease obligations, in other words, for less than what the Default Clause authorized. Instead, the $2026.72 consisted of **$1883.64** in remaining lease payments owed under the lease (44 remaining payments, at $42.81 each ($39 plus tax) = $1883.64) and **$143.08** in various late charges and fees due to Madanat's three missed payments and First Data's efforts to collect up to that point. There was no charge for the terminal, even though First Data was authorized to do that. Had First Data chosen to charge for the fair market value of the terminal, there would have been an additional **$204.05** ($ 187.20 + 9% tax) added to the payoff amount, for a total of **$2230.77**.

10. Madanat has not paid any of the $2026.72 payoff amount and our books still show him as owing that much (and not any additional amount for the terminal).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

08/05, 2014                               **BRYAN BROUILLARD**

# EXHIBIT A



June 24, 2010

Attn: AZMIE MADANAT
Re: Lease No.
Merchant No.

Dear Azmie Madanat,
As per your conversation with FDGL Rep., First Data Global Leasing does hereby enter into the following agreement with HOT WINGS.

First Data Global Leasing will accept the offer of $2026.72 **to be paid in full NO LATER THAN 10 DAYS FROM THE ABOVE DATE.** Once payment has been received and processed by FDGL, you will have no further obligations to FDGL.

FDGL will consider this matter paid in full upon receipt of the aforementioned payment. Please also note clearly, your lease number on the check.

Should you fail to comply with this settlement arrangement, or should your payment not reach FDGL, FDGL will be forced to demand immediate payment in full, and explore all actions available to us.

If you have any questions or require additional information, please feel free to contact FDGL at (800) 455-1251.

Sincerely,

Collections
First Data Global Leasing

**Please remit payment to:**
First Data Global Leasing
P.O. Box 173845
Denver, CO 80217

**Please return equipment to:**
First Data Global Leasing
1307 Walt Whitman Road
Melville, NY 11747